13698

FLOYD v. PARKER

(171 S. E., 29)

494

*Messrs. R. R. Whitlock* and *C. T. McDonald,* for appellant,

*Messrs. Baker & Baker,* for respondent,

October 9, 1933.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

The litigation in this case arose in connection with a distress warrant for rent issued by the defendant upon the crops of the plaintiff. From the transcript of record it appears that the defendant, H. H. Parker, and his sister, Mrs. Gantt, rented a tract of land which they owned in Florance County, to the plaintiff for the year 1930, at a stipulated rental of $300.00, and at the time received from the plaintiff a note or other paper obligating to pay to the defendant and Mrs. Gantt the said sum of money on or before September 1, 1930. It further appears from the record before us that the defendant and his said sister, Mrs. Gantt, in order to enable the plaintiff to procure supplies for operating a farm

on the said lands, on request of the plaintiff, waived the rent lien on the crops on said lands up to the sum of $300.00. The said lands were planted and cultivated by the plaintiff during that year in cotton, corn and tobacco. The amount of advances received by the plaintiff under the said agreement amounted to $267.83, advanced by a third party, who secured a lien on the crops on said place for the same. It further appears that in the early part of the fall of that year, 1930, the plaintiff paid to the said third party, who made the advances for supplies, the sum of $200.00, leaving a balance due said party of $67.83. The distress warrant against the said crops was issued on the 16th day of September, 1930, and on said day the crops on said lands were seized by the agent of the defendant, acting under the authority of said warrant. It is the contention of the plaintiff that the defendant agreed to extend the time for the payment of said rent until September 16, 1930, on which date, as above stated, the distress warrant was issued and said crops seized under said warrant at the instance of the defendant. There seems to be a dispute between the parties as to whether the defendant agreed to this extension or not. On the afternoon of the same day the distress warrant was issued, the plaintiff procured from Mrs. Gantt the note in question by paying to Mrs. Gantt the sum of $250.00, which was accepted by Mrs. Gantt as payment in full. The suit instituted by the plaintiff against the defendant is based upon an excessive, unreasonable, and unlawful distress, on account of which the plaintiff claims to have been damaged in the sum of $5,000.00. In his answer, the defendant, in effect, denies having committed any unlawful act against the plaintiff, and while admitting having seized certain crops of the plaintiff on said lands under the said distress warrant, contends that he was within his rights, and denies that the distress was excessive or unreasonable, and asked the Court that the complaint be dismissed. Issues being joined, the case was tried in said Court before Judge S. W. G. Shipp

and a jury, resulting in a verdict for the plaintiff in the sum of $1,000.00 actual damages and $2,000.00 punitive damages. Thereafter, a motion was made by the defendant for a new trial on the ground that the verdict was excessive, and after hearing argument the Court ordered a new trial unless the plaintiff should remit on the record the sum of $1,000.00 on the verdict as to punitive damages. The plaintiff complied and made an entry on the record to that effect.

In his appeal to this Court the defendant presents eleven exceptions, but states in his brief prepared for this Court that four questions are involved, namely:

"1. The plaintiff sought to recover $5,000.00 as damages for alleged injury claimed as a result of alleged excessive and willful distress for rent. The Court is asked to decide whether or not the testimony relied upon was sufficient to establish excessive distress, and if so, does it go further and establish willfulness and excessiveness as would support a verdict for punitive damages.

"2. The Court stated and ruled that all of respondent's crops were levied upon including that part not harvested in the fields. This Court is asked to decide whether there could be a levy of these crops by appellant's agent, who never went to the fields or even saw these crops.

"3. That the Court is asked to decide whether the Judge's charge regarding the extension of time for payment when there was no testimony along this line, was not harmful error and a charge as to the facts.

"4. And was it not harmful error for the Court to charge in effect that a holder and owner of a non-negotiable instrument must have same with him in order to collect."

We shall consider these questions together.

As to the contention of appellant that there was no testimony to prove excessive distress and no proof upon which to base actual or punitive damages, we deem it sufficient to state that there was ample testimony to take the case to the jury on these questions. Under our view

of the case it is not necessary to enter into a general discussion of the testimony or to state the same at length, and we shall simply call attention to some of the essential matters.

It appears from the record presented to us that the plaintiff and the defendant met up, in a little town near the plantation, on the night of the 15th of September, 1930, and had some discusison regarding the payment of the rent in question. From what each of the parties testified to there was evidently feeling on the part of both. From what the plaintiff stated it may be reasonably inferred that he would have paid to the defendant at that time the entire amount of the rent if the defendant could have produced the note in question, that he (the plaintiff) could have got the money from his brother for that purpose, but that the defendant did not produce the same and did not seem willing to produce the paper. It further appears from the testimony that he had reason to conclude from what the defendant told him on that night that he had until the following day, September 16, 1930, to pay the amount. It further appears from the testimony of the plaintiff that on the following morning he went to Florence to see Mrs. Gantt, the sister of the defendant, whom he learned had the note in hand, for the purpose of making payment; that it was some distance from his home to Florence and he was not able to see Mrs. Gantt until about 3 o'clock in the afternoon, at which time the plaintiff, according to his testimony, saw Mrs. Gantt and procured the note from her by paying to her the sum of $250.00 in full settlement, Mrs. Gantt having agreed to making a reduction of $50.00; that when the plaintiff returned to his home on that afternoon he found that a distress had been made upon all of his crops, including that which had been gathered and been housed as well as the crops in the field. It further appears from the testimony of the plaintiff that he had hands engaged gathering the said crops and preparing the same to be marketed and that by the said distress and seizure the plaintiff was damaged considerably;

that he was unable to gather the crops for a considerable time, due to the fact that his laborers left him and he had considerable trouble in getting labor thereafter. It also appears from the testimony of the plaintiff, and this fact seems to be practically admitted, that the defendant took no steps after this to inform the plaintiff that the distress warrant was no longer effective or that the crops were relieved or released from such distress. From the testimony of the defendant it may be reasonably inferred that the parties came near having a difficulty during their conversation regarding the rent on the night before, that is, on the night of September 15, 1930, and the defendant got the impression that it was the purpose of the plaintiff to take his crops into the State of North Carolina for sale, that is, the tobacco, and the defendant seriously objected to this. It further appears from the testimony of the defendant that about sunrise on the following day, September 16th, the defendant took action to get out his distress warrant and placed it in the hands of his agent early that morning and had the same served on the brother of the plaintiff at the home of the plaintiff on said plantation about 9 or 9:30 a. m.; the defendant believing that he was acting within his rights in trying to collect the said rent. It is the contention of the defendant, as shown by his testimony, that only a reasonable amount of the said crops were seized under the said warrant and that there was no intention to seize the crops in the field. However, as stated by the Circuit Judge during the trial of the case, it appears that the agent of the defendant who made the said distress entered on the said distress warrant the crops seized thereunder and which notation included crops in the field. Under our view of the case the trial Judge could not hold as a matter of law that the crops in the field were not seized. We think that was a question for the jury to determine.

During the admission of testimony in the course of the trial, the trial Judge seemed to be under the impression that it was admitted by the defendant in his pleadings that the

crops in the field were seized under the warrant and made some reference to this fact; but, during the conversation with counsel at the time, called for the warrant in question and read therefrom the notation made thereon by the defendant's agent who served the said warrant and from which it clearly appears it was the intention of the said agent to include among the crops seized the crops in the field. The discussion seems to have ended at that point. In his charge to the jury his Honor did not instruct the jury that the crops in the field were included with the crops distressed and seized. As we construe his Honor's charge, there was no intention to instruct the jury what crops were seized, but his Honor left it to the jury to find whether or not the seizure was excessive.

We are unable to agree with appellant in his contention that there was no testimony regarding an extension of time to make payment. In our opinion, it may be reasonably inferred from the testimony of the defendant that it was the intention of the defendant to wait on the plaintiff for payment until 11 o'clock a. m., September 16th, and that it was reasonable for the plaintiff to draw that inference from what was stated to him by the defendant on the night of September 15th. In his charge his Honor left to the jury the question as to whether or not the time for payment of the obligation was extended.

In answer to the question raised concerning the Judge's charge as to the necessity of the defendant being able to produce the note in order to demand payment we quote his Honor's charge, as follows thereon: "I charge you that, if the defendant, Parker, offered to pay if he would produce the note, then it would be his duty, if the defendant did offer to pay on production of the note, it would be his duty to deliver him the note. I charge you that ordinarily if a note is negotiable so that if a person is given a negotiable note, that his note is payable to the order of another, that is before it is due, why it is at his peril that he

goes and pays it to a man, who hasn't got the note, because he might have to go and pay it a second time. I charge you this paper here is what we call a non-negotiable paper. It is not negotiable like a negotiable note. We have a statute here, at least part of our code provides that where the paper is non-negotiable, that if a person pays it to the original person and has no notice of its transfer to someone else, then he is protected. If he had paid that note to Mr. Parker in the absence of the note, it would have been a good payment, if he had no notice that the note had been transferred to someone else."

This charge was certainly not prejudicial to the defendant's rights.

A careful examination of the record in the case convinces us that it was proper for the Circuit Judge to submit the issues in the case to the jury, and, further, it is our opinion that the defendant has no just ground to complain concerning his Honor's charge.

The judgment is, therefore, affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and BONHAM concur.

MR. CHIEF JUSTICE BLEASE (concurring) : The first part of the quotation from the charge of Judge Shipp, appearing in the opinion of Mr. Justice Carter, is somewhat confusing. It appears there that his statement referred to an alleged offer of payment of the rent due by the defendant. At the conclusion of the charge, when his inadvertence had been called to the attention of Judge Shipp, he corrected the error into which he had fallen, and instructed the jury that when he referred to the alleged offer of payment, he meant to say the offer alleged to have been made by the plaintiff to the defendant.